# PILLOW v. SHIELDS.

————

TRIAL; APPEAL AND ERROR; OBJECTIONS AND EXCEPTIONS; WILLS; EVIDENCE; DECLARATIONS; RES GESTÆ.

1. Where a party withdraws in the trial court his objections to questions propounded a witness, after answers have been taken over his objection and exception, he cannot be heard to urge his objection in this court, and no reversible error can be predicated upon the admission of the testimony.

2. Testimony offered in a will contest, by the caveatee, who was a son of the decedent, to rebut any inference of a dominating influence he may have had over his mother that might be drawn from previous testimony, which was to the effect that although she was a Roman Catholic, he had refused permission to his sister, the caveatee, to send for a priest to administer to their mother when she was on her deathbed—that he had heard it stated in family discussions that his mother had not always been a Roman Catholic, but had been converted to that faith in early life, was *held* to have been properly rejected as hearsay and as being too remote from the issue both in time and causation.

3. As bearing upon the admissibility of evidence of acts and declarations of a testator, in a will contest, involving the question of the exercise of undue influence upon the decedent, the remoteness of the time of such acts and declarations is to be measured in terms of causation and relation to the issue, rather than in terms of time. (Citing *Olmstead* v. *Webb*, 5 App. D. C. 49.)

4. In a will contest involving the question whether undue influence was exercised on the decedent by her son and one of her two daughters, the other daughter being the caveator, the admission in evidence by the trial court of a letter written to the caveator by the decedent five years before her death was *held* not to be reversible error, where all the parties later testified, without objection, concerning every material statement contained in the letter.

5. Where in a contest over the validity of a will dated March 9, 1908, a son of the decedent, charged by a sister with the exercise of undue influence, testified that his mother while away from home wrote and sent him a draft of a will dated February 24, 1908, which she requested him to have put in legal form for execution upon her return, accompanying it with a letter which he did not produce, although the draft of the will was received in evidence on his offer,— it was *held* that letters written by the decedent while she was away from home and dated February 14 and 22, 1908, and offered by the caveator in rebuttal, were admissible in evidence as part of the *res gestæ*, and also as tending to negative the caveatee's explanation of the circumstances under which the will was prepared. (Citing *Dawson* v. *Waggaman*, 23 App. D. C. 428.)

6. In a contest over the validity of a will dated March 9, 1908, a letter written by the decedent to her sister, dated November 19, 1907, and a letter dated May 24, 1909, alleged to have been marked by the decedent "not to be opened until after death," *held* not to be admissible in evidence.

No. 3043.   Submitted April 2, 1917.   Decided June 2, 1917.

HEARING on an appeal by the caveatee from an order of the Supreme Court of the District of Columbia, sitting as a probate court, refusing to admit to probate and record a paper writing offered as a will. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This case comes here by appeal from a decree of the supreme court of the District of Columbia refusing probate and record as a will of real and personal property to a certain paper writing dated March 9, 1908, and offered for probate as the last will of Mrs. Mary E. Pillow, deceased.

The decedent died in the city of Washington, on May 4, 1913, leaving three children as her heirs at law and next of kin; namely, Elise T. Shields, appellee here and caveator below; Gideon J. Pillow, appellant here and caveatee below: and Annie Payne Pillow, a beneficial caveatee below.

Mrs. Shields is the only surviving child of the decedent's first marriage, while Gideon J. Pillow and Annie Payne Pillow are the only surviving children of her second marriage, all of said children being of full age and legal capacity.

Said Gideon J. Pillow is named as the executor of said will, which is short and provides as follows:

I, Mary E. Pillow, of the city of Washington, in the District of Columbia, do hereby make and declare this to be my last will and testament, hereby revoking all former wills made by me.

1. I give and bequeath to my daughter, Mrs. Elise T. Shields, the sum of one dollar($1). My reason for not making this bequest larger is that she has received more from me during my lifetime than my other children hereinafter mentioned.

2. I give and bequeath to my grandson, John R. Shields, the sum of one hundred dollars ($100), said sum to be for his exclusive use and benefit.

3. All the rest of my property, now possessed or hereafter acquired, of whatever nature, real or personal, and wherever situated, I hereby give, devise, and bequeath to my two children, Annie Payne Pillow and Gideon J. Pillow.

4. I hereby nominate my son, Gideon J. Pillow, executor of this will, and authorize him, at such times and places as may be deemed proper, to sell and make proper conveyance of both real and personal property, as necessary or proper to carry out the provisions of this will and to give effect to same.

In witness whereof, I have hereunto set my hand and seal this ninth day of March, A. D., 1908.

(Signed)    Mary E. Pillow.    (L. S.)

The above instrument composed of one sheet of paper, was, this 9th day of March, A. D.; 1908, signed, sealed, and published by Mary E. Pillow, as her last will and testament, in the joint presence of the undersigned, the said Mary E. Pillow then being of sound mind and free from any constraint or compulsion; Whereupon we, being without any interest in the matter other than friend, and being well acquainted with her, but not members of her family, immediately subscribed our names hereto, in the presence of each other and of the testator, for the purpose of attesting said will, as she requested us so to do.

Mary E. Langtree,

P. O. Address; 1727 Lamont St., Washington, D. C.

Maria F. Bailey,

P. O. Address; 1212 Vermont Ave., Washington, D. C.

Against the probate of said paper writing Mrs. Shields filed her caveat, alleging that said instrument was not the last will and testament of said decedent; that said decedent was not of sound and disposing mind at the time of the execution thereof; and that the execution thereof was obtained, if at all, by the undue influence of Gideon J. Pillow, Annie Payne Pillow, or other persons.

Thereupon issues were duly framed between the parties in the trial court, the caveator being made plaintiff and the caveatee defendant.

These issues coming on for trial before a jury were all conceded or withdrawn by the caveator except as to the undue influence alleged to have been exerted upon the testatrix.

Upon that issue the jury found that said paper writing was not executed as the free and voluntary act of said decedent, but was obtained by undue influence practised upon her, and returned a verdict setting aside said will, as a result of which verdict a decree was entered refusing probate and record to said paper writing, from which decree the present appeal is prosecuted.

*Mr. Wilton J. Lambert* and *Mr. Rudolph H. Yeatman,* for the appellant, in their brief cited:

*Capital Construction Co.* v. *Holtzman,* 27 App. D. C. 125; *Hughes* v. *Rader,* 183 Mo. 630; *Kultz* v. *Jaeger,* 29 App. D. C. 300; *Lipphard* v. *Humphrey,* 209 U. S. 264; *Olmstead* v. *Webb,* 5 App. D. C. 38; *Schmidt* v. *Schmidt,* 47 Minn. 451; *Shell's Estate,* 28 Colo. 167; *Throckmorton* v. *Holt,* 180 U. S. 552; *Towson* v. *Moore,* 11 App. D. C. 377; *Warner* v. *Baker,* 36 App. D. C. 493; Greenl. Ev. 15th Ed. Sec. 449; Wigmore, Ev. Secs. 1003, 1004; D. C. Code, Sec. 1625.

*Mr. Henry E. Davis* and *Mr. Joseph Y. Reeves* for the appellee.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, who sat with the Court in the hearing and determination of the appeal in the place of Mr. Chief Justice SHEP-ARD, delivered the opinion of the Court:

The record presents eighteen assignments of error, seventeen of which raise questions of evidence, while the eighteenth is based upon the refusal of the trial court to grant three certain prayers offered by the caveatee.

Errors assigned upon these rejected prayers were not pressed upon the argument, probably because the subject-matter thereof was substantially covered by the oral charge of the trial court, which was as favorable to the caveatee as the law and the evidence justified, and to which charge no exception was taken by either side.

The first question of evidence presented for the attention of this court was based on the following interrogatory asked the caveator by her attorney:

Mrs. Shields, from your first knowledge of your mother, what were her religious affiliations?

Answer.   She was a Roman Catholic.

This question was followed by asking the caveator whether or not there was any noticeable incident in connection with the decedent's devotion upon her deathbed, to which caveator replied that she had asked caveatee's permission to send for a Roman Catholic priest to administer to their mother, which caveatee refused to permit.

Objections to these questions were duly made when they were first asked, and the answers appear to have been taken over the exception of counsel for the caveatee, but it is clear upon the record that in the discussion of this matter that ensued the caveatee withdrew his objection to these questions, and that he preferred to take his chance with the jury as then sitting rather than to move the withdrawal of a juror.

Counsel, having withdrawn his objection in the trial court, cannot be heard to urge it here, and no reversible error can be predicated upon the admission of this testimony.

The foregoing and other evidence relating to the religious affiliations of the decedent was offered by the caveator partly for the purpose of showing that the decedent had changed her religion some three years before making the will in question by leaving the Roman Catholic Church to join a Protestant church attended by caveatee, and to rebut whatever inference of a dominating influence might be drawn from such testimony, caveatee offered to testify that he had heard it stated in family discussions that his mother, the decedent, had not always been a Roman Catholic, but had been converted to that faith in early life, which testimony was refused by the court as hearsay, and as being too remote from the issue both in time and in causation, in which ruling we find no error.

The next assignment of error relied on by the appellant concerns certain rulings of the trial court in admitting and rejecting certain letters alleged to have been written by the decedent.

The first of these letters is dated in 1903, and relates to a transaction in which the decedent, the caveator, and both caveatees took part.

This letter [to the caveatee] is in the writing of the decedent, with a postscript in the writing of Miss Pillow, one of the beneficial caveatees, and is as follows:

My Dear Child: I write to ask you to do me a favor, and that is not to draw your money out of the bank to-day, but let it remain in bank for thirty days. I have made arrangements for your mortgage with Building & Loan. I will pay interest and cost of getting the $500 extra. I fear I will be pressed by Duckett & Dent on the first of March. Mr. Wells has $700, but I need $1,100.50 to take up the mortgage. I am going to try and get the eleven hundred and fifty without calling upon you, and if I do, you can at any time pay the $500 to the Building & Loan. You will lose nothing by this delay as I will pay interest and cost of getting and it will be a great relief to my mind. Under no circumstances would I accept a loan from you without doubly securing you. I will if I have to get any money from you give you my diamond rings with mortgage on land. Please, my dear child, don't refuse me this favor. I fear everything from Duckett & Dent and I wish to feel I am not in their power. I may never use your money, but if you will leave it in bank for thirty days I will never forget the kindness and will return it twofold. Don't refuse me this favor. I believe I will die if you do not stand by me as I have requested. I feel you will do as I request, and I thank and bless you for it.

Your devoted mother,

Mary E. Pillow.

P. S. You need not loan the money on mamma's property if you think it not wise. The paying the interest by us is intended as no.

This letter was written five years before the will in question, and was objected to on the ground that the line of inquiry was too remote from the issue in the case and not pertinent thereto. But it is well settled that remoteness is to be measured in terms of causation and relation to the issue, rather than in terms of time. *Throckmorton* v. *Holt,* 180 U. S. 552, 45 L. ed. 663, 21 Sup. Ct. Rep. 474; *Olmstead* v. *Webb,* 5 App. D. C. 49.

While the pertinency of this letter to the issue is apparent from the fact that it relates to a transaction concerning which all parties to the cause later testified at length without objection.

No ruling of the trial court admitting this letter can be regarded as reversible error here in view of the later testimony from the caveator and both the caveatees, who, without objection or exception, testified at length concerning every material statement contained in said letter; who fully developed the transaction referred to therein; and the participation of the decedent and all parties litigant in said transaction.

The letters [to the caveator] of February 14th and February 22, 1908, offered by the caveator in rebuttal, were properly received as part of the *res gestæ* in the posture which the case had at that time assumed.

The caveatee, in explanation and defense of the will, had testified that the decedent went to Benton, Louisiana, for several weeks in February, 1908, in connection with the settlement of the estate of a relative who had died there intestate. That decedent perceived the difficulties that had there arisen because of intestacy, and of her own motion wrote out a will, or a draft of a will, and sent it to the caveatee in Washington, requesting that he have it put into legal form for her execution upon her return home. That this draft, or so-called holographic will, was dated at Benton, Louisiana, February 24, 1908, and was inclosed with a letter of the same date to the caveatee, which letter he did not produce at the trial. The paper writing executed by the decedent in Washington, and here in controversy, is dated March 9, 1908, and the aforesaid holographic will dated at Benton, February 24, 1908, was offered in evidence by the caveatee and admitted as part of the *res gestæ.* In this state of

the case we regard the two letters written at Benton, dated February 14th and February 22, 1908, as proper evidence in rebuttal as part of the *res gestæ,* and also as tending to negative the caveatee's explanation of the will which he had testified that he had derived from decedent's two letters to him written from the same place, at almost the same time, and neither of which he produced at the trial. *Throckmorton* v. *Holt, supra; Dawson* v. *Waggaman,* 23 App. D. C. 428.

The letter of November 19, 1907, alleged to have been written by the decedent in Washington to her sister in Louisiana, and the so-called certificate or letter dated May 24, 1909, alleged to have been marked by the decedent as "not to be opened until after death" were clearly inadmissible and properly rejected under the doctrine of the *Holt Case, supra.*

None of the various other questions raised by the record has escaped attention, but we are of opinion that the decree of the trial court is just and right, and that it should be affirmed, with costs. And it is so ordered.                        *Affirmed.*